**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

|  |  |
|---|---|
| | ) |
| ISAAC TUMUSIIME, | ) |
|     Petitioner, | ) |
| | ) |
| | ) |
| v. | ) Civ. Action No.1:26-cv-11471-AK |
| | ) |
| | ) |
| TODD M. LYONS, | ) |
| Director, U.S. Immigration and Customs Enforcement; | ) |
| DAVID WESLING, | ) |
| Acting Field Office Director, Enforcement and Removal | ) |
| Operations Boston Field Office; | ) |
| TODD BLANCHE, | ) |
| Acting Attorney General of the United States; | ) |
| MARKWAYNE MULLIN, | ) |
| Secretary of Homeland Security of the United States; | ) |
| JOSEPH D. MCDONALD, JR., | ) |
| Sheriff, Plymouth Sheriff's Office, | ) |
| | ) |
| | ) |
|     Respondents. | ) |
| | ) |
| | ) |

_____

**PETITIONER'S RESPONSE TO RESPONDENTS' OPPOSITION TO HIS PETITION**
**FOR WRIT OF HABEAS CORPUS**


Petitioner Isaac Tumusiime, by and through undersigned counsel respectfully submits

this reply in further support of his Petition for writ of habeas corpus.

## I. THIS COURT HAS JURISDICTION OVER PETITIONER'S HABEAS CLAIM

Respondent argues that this Court lacks jurisdiction under 8 U.S.C. § 1226(e), but that argument fails because Petitioner challenges the legality of his detention, not a discretionary determination.

Federal courts retain jurisdiction under 28 U.S.C. § 2241 to review immigration detention where constitutional violations are alleged. Nothing in section 1226(e) deprives U.S. District courts from hearing and granting *habeas* relief to petitioners detained after denial of bond by immigration courts. *Espana v Nessinger,* 2026 U.S. Dist. LEXIS 66754, at 4 (D.R.I. March 25, 2026)(citing at least 6 cases); *see also, Hernandez -Lara v. Lyons,* 10 F. 4th 19, 34 (1st Cir. 2021). *Hamada v. Gillen*, 616 F. Supp. 2d 177, 178 (D. Mass. 2009) (recognizing habeas jurisdiction over detention challenges), and *Figueroa v. McDonald*, 680 F. Supp. 3d 18, 19 (D. Mass. 2018) (same, where petitioner challenges legality of bond procedures). *Habeas corpus* is the only procedure that exists to ensure that immigration detention complies with law and the Constitution, as reflected in *Angel v. Moniz,* 2026 U.S. Dist. LEXIS 72624 (D.Mass April 2, 2026). At the same time, habeas functions as the only available means for federal courts to review whether detention decisions comply with governing legal standards, rather than merely accepting immigration judge's unsupported conclusions at face value. *Espana v Nessinger, supra,* at 9.

Because detention implicates a fundamental liberty interest, habeas review extends to whether the correct legal standard was applied; whether proceedings met constitutional requirements; or whether the evidence is sufficient as a matter of law. Section 1226(e) does not preclude review of constitutional claims or legal errors. Courts distinguish between non-reviewable discretionary decisions and reviewable legal questions. See *Figueroa*, 680 F. Supp. 3d at 19 (allowing habeas review of constitutional challenges to detention procedures).

Petitioner raises only legal issues in the Petition, regarding the Government's adherence to the correct burden of proof, with legally sufficient evidence conducted, and whether the immigration judge's ruling sufficiently described the evidence and witness statements upon which it relied and its reasoning for denying bond. These are not discretionary determinations. They are the questions of due process, and they are reviewable in *habeas* proceedings. *Espana, supra,* at 4. Under the governing framework of federal judicial review, the application of legal standards and evaluation of legal sufficiency constitute reviewable questions of law, so § 1226(e) does not strip jurisdiction. *Id.*

## II. EXHAUSTION IS NOT REQUIRED AND SHOULD BE EXCUSED

Respondent's exhaustion argument also fails. There is no exhaustion requirement for § 2241 habeas petitions in this context, and courts may excuse any common law exhaustion where constitutional claims are raised. *Garcia v. Hyde,* 2025 U.S. Dist. LEXIS 253787 at 6, 8-9 (D. R.I. December 3, 2025); See *Duy Tho Hy v. Gillen*, 588 F. Supp. 2d 122, 123 (D. Mass. 2008) (recognizing discretionary nature of exhaustion in habeas). Exhaustion is particularly inappropriate where the agency cannot resolve constitutional issues, or where further review would be futile or take so long as to render any remedy useless. *Empana, supra*, at 6, *citing Hernandez-Lara,* 10 F. 4th at 41.

Here, the BIA cannot decide on a constitutional issue. *Garcia, supra, at 6* (Petitioner raises a Constitutional challenge in his *habeas* petition, an area over which immigration courts and the BIA lack any authority to adjudicate) *citing Matter of Cruz de Ortiz,* 25 I & N Dec. 601, 605 BIA 2011 (neither the BIA nor immigration judges have any authority to rule on the constitutionality of the statutes we administer). Seeking further review by the BIA would be futile. Moreover, if Petitioner was required to go through the BIA appeal process first, he would undoubtedly suffer

irreparable harm and hardship in what will eventually be a futile effort. *Garcia, supra.* at 6 (citing *Brito v. Garland,* 22 F. 4th 240, 256 (1st Cir. 2021) (exhaustion might not be required if petitioner is challenging incarceration or a similar deprivation of liberty). The Court in *Garcia* noted that BIA bond appeals' processing times exceeded 200 days in the latest available figures, and detention for such a long time would result in the very harm the bond hearing was designed to prevent, *Id.* at 6, citing *Hechavarria v Whitaker,* 358 F. Supp. 227, 240 (W.D. N.Y. 2019).

*Habeas corpus* exists to address ongoing unlawful detention, where delay itself constitutes harm. *Angel, supra.* As the habeas framework recognizes, the writ is designed to provide immediate judicial review of custody claims, not much-delayed administrative review by the BIA, even if that delay would not fail to address Petitioner's Constitutional claims.

### III. THE BOND HEARING VIOLATED DUE PROCESS

The Fifth Amendment prohibits arbitrary detention. *Habeas corpus* has long been governed by equitable principles that require courts to ensure fairness in custody determinations, as recognized in *Schlup v. Delo*, 513 U.S. 298, 319 (1995) (describing habeas as an equitable remedy).

The immigration judge below failed to address any evidence, much less evidence submitted or proffered by Petitioner, and failed to offer any reasoning for its decision to deny bond. Immigration judges must sufficiently explain their reasoning to permit appellate or judicial review of their decisions. *Espana, supra.* at 9, *citing Barnica-Lopez v Garland,* 59 F. 4th 520, 530 (1st Cir. 2023) *and Pan v Gonzales,* 489 F. 3rd 80, 87 (1st Cir. 2007). In *Espana,* Judge McConnell found that the immigration judge's decision, rendered in  the same terms as the judge in the present case, was inadequate to support a denial of a bond where, in Petitioner's case, the decision both verbally at the hearing and in a written order thereafter, stated only that the court found that (here

Petitioner), "is a danger to the community by clear and convincing evidence, and so the court is denying bond." *Compare, Espana, supra.* p. 9.

Due process requires that civil detention under 8 U.S.C. § 1226(a) be justified by a reasoned determination demonstrating that the Government has carried its burden of proof. *Hernandez-Lara v. Lyons,* 10 F.4th 19, 28 (1st Cir. 2021). In this Circuit, continued detention under § 1226(a) is constitutionally permissible only if the Government establishes dangerousness by clear and convincing evidence. *Id.* at 41–42. That burden is not a mere formality; it is the central safeguard against arbitrary detention. Where liberty is at stake, adjudicatory decisions must rest on articulated grounds sufficient to permit meaningful judicial review and to ensure that detention is based on lawful reasoning rather than speculation. See *Hamdi v. Rumsfeld,* 542 U.S. 507, 533 (2004) (plurality opinion) (due process requires a meaningful opportunity to contest the factual basis for detention).

Courts within this Circuit have consistently recognized that, even in contexts where agency decisionmakers are afforded discretion, due process requires sufficient explanation to permit review. *Caporali v. Whelan,* 582 F. Supp. 217, 219-220 (D. Mass. 1984). Where the record is "so opaque" that a reviewing court cannot discern the basis for detention, continued custody cannot stand. *Caporali,* 582 F. Supp. at 220-221. The requirement of reasoned decision-making applies with particular force where the Government bears a heightened evidentiary burden, and the consequence is physical detention.

An IJ's refusal to articulate any reasoning is constitutionally deficient where the evidentiary record admits of multiple plausible inferences, not all of which are lawful bases for detention. *Id.* In such circumstances, a reviewing court cannot uphold detention by inferring the

5

decisionmaker's reasoning without impermissibly supplying its own justification. *Caporali,* 582 F. Supp. at 220-221.

As the Supreme Court has made clear, agency action must stand or fall on the reasons actually given, not on post-hoc rationalizations constructed during judicial review. *Department of Homeland Security v. Regents of the Univ. of California,* 591 U.S. 1, 23-24 (2020), quoting *American Textile Mfrs. Institute, Inc. v. Donovan,* 452 U.S. 490, 539 (1981) ("[T]he post hoc rationalizations of the agency... cannot serve as a sufficient predicate for agency action."); *Overton Park, Inc. v. Volpe,* 401 U.S. 402, 419 (1971) (rejecting "litigation affidavits" from agency officials as "merely 'post hoc' rationalizations"). This principle is not limited to administrative law; it reflects a core due process concern that courts do not guess at the basis for government action when fundamental liberty interests are at stake.

The requirement for sufficient reasoning is even more important in § 1226(a) proceedings because detention is discretionary and conditional release is the statutory default. *Zadvydas v. Davis,* 533 U.S. 678, 695, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (citing *Foucha v. Louisiana,* 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992)). Where the IJ provides no explanation, a reviewing court cannot determine whether the decision rested on a permissible assessment of dangerousness or on impermissible considerations such as frustration, as indicated in the Chelmsford police report case no. 942389 (06/09/2025) Exhibit B, Item 2, where the police opine that they did not see indications of assault but charged both parties with misdemeanor assault and battery, language differences (Petitioner's first language is Luganda and he is not fluent in English), guilt by association, occupational proximity, or even racial bias in assuming that two individuals from the same country are more likely to be involved in the same alleged crime. *Id. at 31–32.* Due process does not permit courts to resolve that uncertainty by assumption.

Even if this Court is willing to ferret out any logical underpinnings for the immigration judge's denial of bond to find any that are clear on the record that was before the immigration judge, there is insufficient evidence in the record to support a finding of dangerousness by clear and convincing evidence, much less any explanation for discounting Petitioner's evidence or ignoring consideration of alternatives to detention.

Clear and convincing evidence has been characterized as.

"...an "intermediate" standard of proof—España v. Nessinger somewhere between a preponderance of the evidence and beyond a reasonable doubt—that the Supreme Court has mandated in civil commitment proceedings, which implicate "a significant deprivation of liberty that requires due process protection." *Addington v. Texas,* 441 U.S. 418, 424, 425, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979); see also *Santosky v. Kramer,* 455 U.S. 745, 756, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). According to the Supreme Court, the clear and convincing standard is met by proving that a factual contention is "highly probable." *Colorado v. New Mexico,* 467 U.S. 310, 316, 104 S. Ct. 2433, 81 L. Ed. 2d 247 (1984). Likewise, the BIA has defined the standard as "'that degree of proof though not necessarily conclusive, which will produce in the mind of the court a firm belief or conviction, or as that degree of proof which is more than a preponderance but less than beyond a reasonable doubt.'" Matter of *Patel,* 19 I&N Dec. 774, 783 (BIA 1998) (quoting Matter of *Carrubba,* 11 I&N Dec. 914, 917 (BIA 1966)). The Government believes that it can [*34] detain—or, more accurately, re-detain [Petitioner] for an unspecified period of time based on nothing more than its own say-so. The Government is wrong. Due process demands more. An unreliable, uncorroborated I-213 form simply cannot, by itself, serve as clear and convincing evidence sufficient for a finding of dangerousness. Cf. *Picado,* 2026 U.S. Dist. LEXIS 27155, 2026 WL 352691, at *7 (reaching the same result with regard to an uncorroborated police report); *Pineda,* 2025 U.S. Dist. LEXIS 233117, 2025 WL 3267328, at *1 (same)."

*Espana, supra.* At 11-12.

The only evidence introduced at all in this matter speaking to dangerousness are second or third level hearsay statements of others as reported in police reports. The reporting police were not percipient witnesses: they made assumptions after they arrived on the scene after most suspected actors had departed based on conflicting stories they heard.

First, Federal Courts have held that uncorroborated police reports cannot by themselves, establish dangerousness as a matter of law. *Espana, supra.,* at 10 *citing, inter alia, Alvarez-*

*Pineda v Nessinger,* No. 25-cv-108-JMM-AEM (D. R.I. 2025) at 1.  In accord, *see, Picado v. Hyde,* 2026 U.S. Dist. LEXIS 27155 at 15 (D. R.I. 2026), *Pineda v Nessinger,* 2025 U.S. Dist. LEXIS 233117 at1 (D. R.I. 2025); *Diaz Calderon v Barr,* No. 2:20-cv-11235-TGB (E.D. Mich. 2020). Charges of crimes are not convictions, but Mr. Tumusiime was charged with destruction of property; charges of domestic violence were dismissed.[1]

Second, if the only evidence contained in police reports is hearsay that was obtained from someone other than the Petitioner, that evidence loses trustworthiness. *Espana, id.,* at 10, and may not be considered at all unless the trier of fact first determines that the third-party report is reliable and its use would not be fundamentally unfair. *Id.*

Finally, the report loses trustworthiness further if the I-213 form including the report contains information that is incorrect, *Id., at 10-11;* for example, that Mr. Tumusiime had never applied for any immigration benefits since entering the United States, when it was clear on the record that his adjustment of status application as an immediate relative was not only pending but he had a scheduled interview to adjust status pending in March 2026 when he was detained. Respondents similarly look to the police report as the only support for an allegation that Petitioner had been accused of. Respondents alleged that Petitioner "grabbed [Petitioner's wife] by the throat, carried her out of the house and dropped her," (Chelmsford Police Report Case No. 942389, June 9, 2025, Exhibit B, Item 2) when the evidence proffered shows that the officer "observed no marks on her neck or anything to indicate any sort of struggle," and that she "began to hit him on the side of his head" when he carried her outside the home. The police report additionally emphasized that:

---

[1] Compare, *Doe v. Moniz,* Civ. Action No. 1:25-cv-12094-IT (D. Mass. September 5, 2025), where Judge Talwani found detention based merely on arrests did not meet the requirements of Due Process, even where the specific arrests charged were authorized by statute in the Laken Riley Act.

"Neither party had apparent injuries to them. [Petitioner's wife] was standing at the front door upon arrival which is not normal behavior for someone who alleged they had just been assaulted. I spoke to Sgt Mead and advised him I would be charging them both with assault and battery and put the matter in for a hearing.…"

*Id. at 2.*

Petitioner's wife had written an affidavit of support attesting to the lack of malicious assault by Petitioner against her during the episode described above, "[Petitioner] is a gentle man who has never hurt or threatened me or my children and none of me or my children have any fears about [Petitioner] doing anything bad." (Exhibit C at 23) Petitioner's wife was willing to testify to such effect in front of the Immigration Judge at Petitioner's bond determination hearing, with a summary of her expected testimony included in Petitioner's evidence submission to the Immigration Judge (Exhibit C at 9). As such, the immigration court leaves us at a loss for how and whether it evaluated this evidence, why it would not allow Petitioner's wife to testify, or whether it even looked at the affidavit she submitted.

Due process requires a meaningful and reasoned decision so this Court can intelligently review the basis for continued detention without bond. Where the immigration judge fails to provide adequate reasoning or fails to identify the evidence upon which it relies, detention cannot stand.

Last Respondent's claim, citing only BIA precedent, that the immigration judge did not need to consider conditions of release other than detention which would reasonably mitigate any dangers he was claimed to have presented is without merit; indeed, it is another reason that any appeal to the BIA would be futile. "At the very least, the IJ was required to consider possible alternatives to detention…[a]nd at the very least, the IJ was required to determine whether the

9

government's evidence demonstrated that any and all proffered alternatives to detention would not protect the public." *Hechavarria, supra.,* 358 F. Supp. 3rd at 242. *Costa v McDonald,* U.S. Dist. LEXIS 27125 at 7 (D. Mass 2026) ("Immigration Judge's failure to consider whether alternatives to detention or other less restrictive means could address the risks of danger posed by Petitioner to the community was constitutionally deficient"). See also, <u>*Higiro v Nessigner,*</u> 2026 U.S. Dist. LEXIS 52268 at 18 (D. R.I. March 18, 2026) (Due Process requires the IJ in his case to have considered alternatives to detention *before* denying him release on bond, and that the IJ's failure to make this consideration rendered her bond determination "legally insufficient.")

Dated: April 10, 2026

*Respectfully submitted,*

 /s/ Carl Hurvich /s/
Carl Hurvich, Esq.
Brooks Law Firm
10 High Street, Suite 3
Medford, MA 02155
(617) 245-8090
Carl@BrooksLawFirm.com
RI Bar # 9740
*Counsel for Petitioner*

CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2026 this document was filed electronically through the Court's CM/ECF system. Notice of this filing will be sent to all counsel of record via CM/ECF.

/s/ Carl Hurvich
Carl Hurvich

10